Thank you, Your Honors, and may it please the Court, my name is Frank Zavarri, I represent the United States of America. I'm going to try to reserve two minutes of my time for a moment. Okay, watch the clock and we'll try to help. Will do, Your Honor. The District Court erred in this case by failing to recognize there are two distinct lines of cases defining two distinct terms, and those terms are the guidelines term, controlled substance offense, and the statutory term, drug trafficking crime. And while they share a similar definition, the guidelines has one component that the statutory term does not, and that's the commentary. And what the commentary does is it further explains the guideline, and it's governed by... Well, it seems to me it goes beyond the guidelines because the guideline doesn't say attempt. That's correct, Your Honor, but what the guideline does is provide a broad definition. Yeah, it may be broader than, and the commentary may be broader than the guideline. I mean, that's my problem. And, Your Honor, I... If attempt didn't appear in the previous section, would we, could we read attempt into that? If attempt were not in the commentary... No, there's two sections here. There's 4B1.2A and 4B1.2B, and attempt, I believe, is in A. You're under B, and attempt is not mentioned. The commentary says attempt is a component of both A and B. Correct, Your Honor. Would your argument be stronger if A omitted attempt? Your Honor, I don't believe so, and that's... Okay. Isn't your argument now much weaker because Congress was, or the Sentencing Commission was express in including attempt in A, omitted it from B? Your Honor, I don't believe so, and that is because of the framework we get from Anderson that tells us how to interpret the text of a guideline and the commentary. And Anderson tells us that when you're interpreting the two, you don't just look at the text of the guideline. You have to look at both, and that's the first step. I have to look at both what? You mean I have to look at the... Yeah. When you're interpreting the text of the guideline, you have to look at the commentary, and if the commentary has it in it, that means the text does too? That doesn't make any sense. What Anderson says is that when you're interpreting what a guideline means, it's necessary to look at both the commentary and the guideline itself. Well, of course, that's true. I get that, but if the guideline says A and the commentary says A plus B, I'm supposed to say the B's in the guideline? Not necessarily, Your Honor. I don't think that's what we have in this case. Okay, so tell me why. In this case, we have a definition that doesn't say one way or the other, whether attempts are included, whether solicitations are included, whether... Well, you know, attempt is such a common crime, you'd expect if they or to have omitted it in both. That's why I asked you if your argument wouldn't be stronger if the word attempt were omitted from A. And, Your Honor, in interpreting it, I think it's necessary to look at the commentary as well. Well, I looked. B simply doesn't say one way or the other whether it's included. Right, but what's suspicious is that A does. A goes out of its way then to say attempt is included. And in B, they do not repeat that. So how do we include attempt there where it's expressed in A and omitted from B? Well, Your Honor, the question is whether it's inconsistent. And in determining if it's inconsistent, you have to look at the text of the guideline and the commentary and determine whether they can be read in harmony. And that's what Anderson instructs to do in this situation. Now, is inconsistent, in the way you're using the term, different from broader? I mean, inconsistent can mean conflict. And we're not talking about conflict. What we're talking about here is that the commentary is broader. And you're saying is, yeah, but that's okay. It's not that much broader. Your Honor, there are two distinct questions. And one is whether the commission had the authority to expand or broaden the text of a guideline. It did, if it used the text, of course. But can it do it by the commentary? Your Honor, that's not the challenge that's been made here, though. That's actually previously been ruled on by the Ninth Circuit. And it's been held to be within its authority to add that commentary language. The specific challenge in this case is whether it's inconsistent, which is a separate and distinct question from whether it had the authority to potentially broaden. Okay. This is kind of an abstract matter. But I want to focus on what inconsistency means, either in our case law or in the way you're using it. Inconsistency clearly would be, clearly would include something that's contrary. The guideline says A, and the commentary says not A. And that's inconsistent. But is that the only way in which a commentary can be impermissible with respect to the guideline says drug offense, and the commentary says mortgage fraud? Is that okay? No, Your Honor. That would be something different. It is? Well, yeah. Well, the crime and attempt. Those might be different, too. Your Honor, I would submit to the court that what the court in Shoemate did is similar to what both the Seventh and Tenth Circuits have done. And that's to look at the text of the guideline and view it as very broad in and of itself, and look to the commentary for further definitional support. And when those circuits have done that, what they've done is looked at the commentary and concluded that it is as broad as it really seems. And it doesn't say one way or the other in the text of the guideline whether it's included. The commentary concludes that it is. And it can be viewed as a definitional provision. Instead of cluttering up the text of the guideline, saying that it includes aiding and abetting to distribute a case. You're saying the commentary is a definitional provision? Correct, Your Honor. Well, but the guideline itself has a definitional provision. So you say, well, they already did give me a definition. That's my problem. The definition is narrower than the commentary. Your Honor, the commentary further clarifies what the scope of the guideline encompasses. Can you point to any other provisions of the sentencing guidelines where there's a parallel problem or a parallel where the commentary adds attempt that has been omitted from the language of the... It just seems like such a common thing, attempt that the sentencing commission might have done this someplace else. Correct, Your Honor. I believe there's a block quote in my brief from the Tenth Circuit that goes through some of those additional areas of the guidelines. I don't have them right in front of me. I can grab them if you would like. Oh, you can do it on rebuttal if you like. But, Your Honor, in terms of... And really, it's what the D.C. Circuit did is at odds with what the Ninth Circuit framework from Anderson requires. Did you cite Vea Gonzalez in your brief? I can't remember now. Is that a case you're familiar with? I do not believe so. Because we rejected the exact argument you've been debating with my colleagues in that case. I don't... I have it. I just... I can't remember if you cited it or maybe you just didn't find it. But I was interested to hear why you're not relying on that case because you're sort of debating this question as though we're writing on a blank slate. All right. I believe Anderson is the case that would provide the framework. This comes after Anderson, yeah. Okay. You're not familiar with it. That's fine. I'll ask your opponent, obviously. Okay. Let's hear from the government and then... Excuse me. Let's hear from the other side and we'll then hear from you, the government, afterwards. Thank you, Your Honor. Thank you. I'm so used to the government coming second. I'm struggling here. Excuse me. May it please the court, I'm Thad Blank from the Federal Defender Services of Idaho on behalf of Mr. Crum. And we're urging this court to follow the D.C. Circuit's decision in Winstead in holding that the... So you're not familiar with Vea Gonzalez either? I'm not familiar with Vea Gonzalez. Okay. Well, it's Vea, V-E-A. Vea. I mean, I am on board with your asking us to follow the D.C. Circuit. I think that's the right outcome. But I'm looking at a case in which we, in 1993, confronted this exact argument and rejected it as squarely as the government is urging us to. I just don't... I'm wondering if you have any ideas as to how we would avoid following that decision here. Your Honor, if both of us just missed a case, it may be appropriate for a slight amount of additional briefing to address it because I'm not going to spin my wheels and try and respond to an argument that I'm not exactly sure what it is. Okay. In respect of what we might want you to do, if we want supplemental briefing, we'll ask for it. So... And unless we ask for it, don't worry. I understand. Of course, Your Honor. But if it's essential to the Court's decision, I'd ask for the opportunity if that's... Okay. ...if that's inimical. I do want to talk for a little bit about our narrower argument, which the government didn't discuss in its argument. And that's that the essential feature of a controlled substance offense is distribution or possession with intent to distribute. So even if we accept that solicitation is read into the commentary, is part of the ENCODE offenses that the Court considers, that still leaves the question, solicitation of what? And that what is important? It's solicitation of distribution. The least of the conduct that Mr. Crum could have been convicted of is soliciting another to possess, to purchase drugs from him. And that's not a distribution offense. That's not solicitation of a distribution offense. That's not an issue that this panel has decided. It's not decided by Shoemaker Lee. Those decisions don't do the legwork that would be necessary to resolve that issue. They don't define what generic solicitation is. They take the first step in terms of doing the construction of the commentary to determine that solicitation is there. But that leaves the question for this Court, okay, solicitation is part of the commentary. Is this solicitation of a controlled substance offense in this instance? You're relying mostly on Pollack, I assume, to make this argument? You think that's the decision that expanded Oregon law on this point? I think Pollack does expand Oregon law on that question. But that's really, it's an attempt case, right? Not a solicitation case. That's how it was analyzed, no? That's right. That's right. There's this chain of cases that pull. So the first case in this series in Oregon is Sargent, which is a conviction under a solicitation statute. And then they're appeals are saying, what would constitute solicitation? Just offering to sell without any evidence of a further intent to distribute by the person that's buying the drugs. It would constitute attempt under Oregon law. But no, it's the attempt to distribute yourself. The solicitation is when you're trying to get a third party to commit a crime, right? What you have in a case like Pollack is an attempt on that person's part to distribute the drugs he or she possesses to another. Right. But this is the weakness in the government's argument, is they're trying to pound what is solicitation and offer to sell into an attempt. I mean, their argument really would make a lot more sense if they were arguing that this type of solicitation constitutes attempt. Those are the terms on which all the other circuit courts have analyzed this type of conduct. They're analyzing whether an offer to sell involves enough in that particular state to constitute attempt. And that's what, that's how this Sandoval v. Sessions, too. But Sandoval v. Sessions held that Oregon law doesn't constitute attempt. There's not enough there. It's just the offer to sell. There's no additional corroborative act that's necessary under Oregon law. So the government can't come up here and argue that Oregon law constitutes attempt. I read Pollack as not, I don't read Pollack as having read out of, you know, the attempt offense at issue there, some kind of, you know, the actual intent to distribute. That's the problem in the cases that you've relied on, is that some of the states just would allow a mere offer to sell, even divorced entirely from any intent on the person's part to carry out the offer to sustain a conviction. And that's not true in Oregon. In Pollack, the court explained why, given the circumstances in which the offer was made, the officer, there was a probable cause issue, the officer could infer that the person really did have the intent to actually carry out the distribution. The problem with, I disagree that there's necessarily a difference between Oregon law and those other cases. That's kind of the argument that the government makes in its brief. And basically what it does is it uses the federal court's criticism of the limited actus rea required in those statutes, and then reads that as some sort of holding about what Connecticut state law or Kansas state law requires in terms of intent. I'm sure those statutes have an intent requirement as well. Oregon purports to as well. The problem is that it allows the mere utterance of the words, the offer to sell, to be sufficient evidence of the mens rea. Let's say in Pollack, the offer instead of being to the two women, I'll sell you presumably like personal use quantities of ecstasy, I think it was. I don't know, the person said, I'll sell you 10,000 kilograms of cocaine. I think under those about their intent to carry that out. They're standing there, they don't have, right. But I think it was the circumstances in which the offer was made. That's what the court, as I read it, said. Yeah, it was, he didn't, there wasn't any concrete proof of possession coupled with the offer, but it was made under circumstances where it would be reasonable to infer that the person was actually serious. They weren't just offering to sell you the Brooklyn, Brooklyn bridge kind of thing. Right. Um, and I understand your point. I guess you have to read it in conjunction with, with, um, self and sergeant. And we cite a district court decision that I think does a good job of describing just how broad that underlying view of what's required is under Oregon law that I believe it's sergeant where it's a jail call and the person is telling a third party, Hey, you get my friend out, you take him to, I think California and a buddy of ours will give you five, five kilos. And there's no evidence of an agreement. There's nothing else really that's described in the facts other than the jail call itself. And that's something that the Sandoval v. Sessions focused on is really the lack of any corroborative evidence in that, that was nonetheless found to be held sufficient to constitute solicitation under Oregon law. So you combine that with Pollack and there's just nothing that's required there other than the offer to sell in many instances. Um, and, and, you know, it's a categorical approach. So the question is whether categorically something more is required in it. And Oregon holds that the act of offering to sell in certain circumstances is in and of itself enough to constitute solicitation or an offer to sell or attempt, which this court has held is, is not, um, a tantamount to attempt under federal law. So that's the problem. Solicitation doesn't, you know, the fact that solicitation is included in the guidelines commentary doesn't change that it still has to be solicitation of a distribution offense. Okay. So for those reasons, we'd ask this panel to affirm the decision of the district court. Mr. Crum's conviction does not categorically qualify as a controlled substance offense. Okay. Thank you. Thank you. Response. Thank you, Your Honors. I believe Judge Watford hit the nail on the head in observing that Oregon still requires the intent to distribute a controlled substance. And the difference between that and states that criminalized the words of the offer is the intent with those statutes that criminalized the words are the intent to utter the words. The intent required under Oregon law is to distribute a controlled substance. In terms of the conduct being broader, the Shoemake court was aware of Sargent and Self when it made the decision and the scope of Oregon law. And Pollock didn't really change the scope of Oregon law. It still requires an intent to distribute a controlled substance. In terms of whether this should be couched as an attempt or a solicitation, the government's urging this court to follow prior decisions of this circuit, which have characterized an offer to sell as a solicitation. And in Lee, the court didn't simply make the decision because the defendant had argued that an offer to sell is a solicitation. Therefore, Shoemake applies. The court in Lee stated right at the beginning that we compare the elements of the statutory definition of the crime of conviction with a federal definition of the crime to determine whether the conduct prescribed by the statute is broader than the generic federal definition. And from there, the court went through the categorical approach. It went through the modified categorical approach. And its conclusion was these documents on their face established that Lee pled guilty to selling or offering to sell cocaine base conduct that falls squarely within the definition of controlled substance offense. It decided the exact issue that the defense is trying to get around in this case, but it was directly on point and it decided that issue. Unless there are any further questions. Okay. No, thank both sides for your helpful arguments. United States versus Crum submitted for decision. The next case on the argument calendar this morning, United States, XRL Perry versus Hooker Creek Asphalt.
judges: W. Fletcher, Bybee, Watford